MOHAMMED WAEL ALY (SBN 312419)
**NDH LLC**
925 North La Brea Avenue, 4th Floor
Los Angeles, CA 90038
Tel.: (714) 414-3736
maly@ndh-law.com
mohammed.w.aly@gmail.com
*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CAL-SARA and OSI STAFFING, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SUNZ INSURANCE SOLUTIONS, LLC; SUNZ HOLDINGS, LLC; SUNZ INSURANCE COMPANY; and NEXT LEVEL ADMINISTRATORS, <br><br> Defendants. | CASE NO.:  2:21-cv-287 <br><br><br><br><br> **JURY TRIAL DEMANDED** |

**COMES NOW,** Plaintiffs CAL-SARA and OSI STAFFING, INC. ("OSI") and, by way of this Complaint against Defendants SUNZ INSURANCE SOLUTIONS, LLC, SUNZ INSURANCE COMPANY, SUNZ HOLDINGS, LLC, and NEXT LEVEL ADMINISTRATORS, hereby allege as follows:

## JURISDICTION

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332(c), diversity of citizenship.

2. The contracts which are the subject of this action were entered into in the County of Los Angeles, State of California, and venue is therefore proper within the Central District of California – Western Division. The parties are citizens of different states and the amount in controversy in this matter, exclusive of interest and costs, exceeds the sum of $75,000, as more fully set forth below.

## PARTIES

3. Plaintiff Cal-Sara is a nonprofit Mutual Benefit Corporation organized under the California nonprofit mutual benefit corporation law. The purpose of Cal-Sara is to promote the common business interest of recognizing and eliminating workers' compensation fraud in the temporary staffing/recruiting industry and promoting legal and regulatory compliance in the sale of workers' compensation insurance. Cal-Sara's members include staffing services companies. Plaintiff OSI is a member. No member is a resident of Florida.

4. Plaintiff OSI is a California corporation and does business in the State of California, with its principal place of business located in Downey, California.

5. Defendant Sunz Holdings, LLC ("SUH") is 100% owned by Steven F. Herrig, the sole and ultimate controlling person of SUH, per the National Association of Insurance Commissioners ("NAIC") Holding Company Act. SUH is the owner of the Trademark "Sunz Insurance." "Sunz Insurance" is identified as one of the responsible entities on the cover page of the Loss Fund Management Agreement and Quotation, which hereinafter referred to as the Collateral Program Agreements. See Exhibit 1 and Exhibit 2.

6. Defendant Sunz Insurance Solutions, LLC ("SIS") is domiciled in Florida and 100% owned by SUH. SIS is a Licensed Broker Agent in California.

1  SIS entered into an Underwriting Agency Agreement with United Wisconsin
2  Insurance Company ("UWIC").

3    7.  Defendant SIS underwrites and issues policies using UWIC by way of a Quota Share Reinsurance Agreement ("Reinsurance Agreement"), as discussed below.

4    8.  Defendant Sunz Insurance Company ("SIC") is an insurance company domiciled in Florida, 100% owned by SUH. SIC is *not licensed* to do the business of insurance in California. SIC has an exclusive Managing General Agent ("MGA") agreement with SIS, which allows for a fee of twenty-five percent (25%) of the direct premium earned. SIC is "Not Rated" by AM Best.

5    9.  Next Level Administrators ("NLA") is a Florida company 100% owned by SUH and is a licensed third-party administrator ("TPA") to manage and adjust insurance claims. SIC maintains a claims services agreement with NLA, and NLA receives a service fee equal to four percent (4%) of earned total standard premium. NLA is not identified as a SUNZ affiliate in the Program Agreements. Exhibits 1 and 2.

6    10.  Defendants the integrated enterprises of SUH, SIS, SIC, and NLA are hereinafter collectively referred to as ("SUNZ").

7    11.  UWIC is a foreign property and casualty insurer domiciled in Wisconsin, approved to issue workers' compensation policies in California. Workers' Compensation represented approximately 92% of the gross written premiums of UWIC in 2018. UWIC's gross written premiums are produced directly through brokers and agents, as well as through fronting arrangements. The fronting business arrangements typically involved several agreements (e.g., an underwriting agreement or claims administration agreement), which provide for a delegation of certain authorities to third party administrators and managing general agents. SIC has a one hundred (100%) Reinsurance Agreement with UWIC, which assumes 100% of the gross liability and written premium on business covered

under the Reinsurance Agreement. UWIC collected approximately 10% in total fees for the fronting arrangement.

12. UWIC "issued" the 2019 Workers' Compensation Policy ("Program Policy"). (Exhibit 3).

## PRELIMINARY STATEMENT

13. The integrated SUNZ Enterprise aids and abets the affiliate and unlicensed SIC to do the business of insurance without a license in California by way of an unfiled, unapproved, and unauthorized reinsurance scheme. The scheme violates multiple provisions of the California *Insurance Code*, most notably those corresponding to the NAIC Holding Company Act, by undermining and making an end run around the legal risk transfer mechanisms that state law intended for insurance products by way of an illegal side, or collateral, agreement.

14. The scheme is facilitated by a side transaction from the licensed Issuing Insurer's Program Policies, which contain the regulatory approved, legally filed rates, authorized terms, and conditions.

15. SIS facilitates the said side transaction by selling an Insurance-Linked Security ("ILS"). SIS is acting outside the purview of its California Department of Insurance ("CDI") issued Broker-Agent license, thus violating the provisions of the NAIC Managing General Agent ("MGA") Act Statutes. The ILS is embedded within the Collateral Program Agreements marketed under the moniker of a Workers Compensation Insurance Program.

16. In stark contrast to the legally approved "insurance," the ILS is in reality an illegal, unfiled, reinsurance related transaction that puts the policyholder *insureds* (i.e., OSI) in the position of ultimate *reinsurer* of the risk. By way of the ILS, the risk is transferred from the "issued" Program Policies to the 100% reinsurer SIC; ultimately all risk is passed back to the policyholder— i.e., OSI— who acts as the ultimate reinsurer, or "retrocessioinare."

17. In sum, SUNZ is a non-admitted, foreign insurer as it pertains to the worker's compensation insurance policies issued by SUNZ to Plaintiff. Thus, SUNZ is subject to California *Insurance Code* Section 700(a), which governs the admission and certification of insurers before they may transact insurance business in the State of California.

18. As a non-admitted and foreign insurer transacting insurance business in California, SUNZ is required, pursuant to California *Insurance Code* Section 1616, to either procure a certificate of authority to transact insurance in California or give a bond in this action in an amount to be fixed by the Court sufficient to secure the payment of any final judgment which may be rendered in this action before it may file any pleading in this action, including a responsive pleading to this Complaint.

19. Plaintiffs shall, upon filing and service of this Complaint, file with the Court a Motion for an Order that SUNZ obtain the requisite certificate of authority or post a bond before being allowed to file any responsive pleading in this action.

## FACTS

20. SUNZ collects fees under the ILS that are over and above the amounts of premium, claims and collateral owed under the Program Policies.

21. SIS is licensed in California as a broker agent. Broker Agents are defined as individuals who can act as an agent representing one or more insurers and also as a broker dealing with one or more insurers representing the insured. A Managing General Agent, MGA, is a Broker Agent contractually authorized pursuant to a written agreement with an insurance company to manage all or part of the insurer's business activities, pursuant to Cal. Ins. Code § 1704. An MGA can manage the marketing, underwriting, policy issuance, premium collection, and claims payments of an insurance company. An MGA earns a commission for those services. Commissions are a portion of the policy premium paid to an agent by the insurance company as compensation.

22. The presumption of Broker Agent status is determined based on the totality of the circumstances indicating that the Broker Agent is acting on behalf of the insurer. A Broker Agent acting as an MGA, per Cal. Ins. Code § 1704, on behalf of an insurer may not collect below the purchased policy rates and premiums and may not collect above the purchased policy rates and premiums.

23. In this set of circumstances, SIS, as a licensed Broker Agent, is acting as an MGA for UWIC on the Program Policy. As an MGA for the Issuing Insurer, SIS cannot collect any more or less than the policy premium cited in the Program Policies.

24. California insurance law maintains an extremely broad definition of solicitation. According to the CDI, "solicitation" is any statement or act designed to provoke or heighten a person's interest in buying insurance. Negotiation means communication with another person with the goal of arranging a contract. The California insurance code prohibits the solicitation and/or the negotiation of unlicensed, unauthorized, un-filed or unapproved contracts of insurance or contract relating to insurance.

25. The SUNZ Collateral Program Agreements (including the ILS) are separate from the Program Policies and are unlicensed, unauthorized, unfiled, and unapproved by the CDI or any other state. SIS is acting outside the scope of its license as an MGA, as set forth above, when it solicits and negotiates the SUNZ Collateral Program Agreements, and, in particular the ILS.

26. The SUNZ Collateral Program Agreements are contracts of adhesion that prospective policyholders, i.e., OSI, are coerced to enter because the issuance of Program Policies are conditioned upon the purchase of the Collateral Program Agreements, including the ILS.

27. No Program Policy is purchased and no premiums are paid for any licensed transaction; in fact, program charges are paid for the ILS in lieu of the licensed Program Policy. Program charges amount to fees as profits for various

elements of the unfiled Collateral Program Agreement (including the ILS) in violation of the provision of Broker Agents and MGAs (Cal. Ins. Code § 1704). These fees and agreements materially alter the filed rates, terms, and conditions of the underlying issued Program Policy.

28. Agreements not filed with or approved by CDI have been held to be unlawful and void in cases and administrative decisions such as *American Zurich Ins. Co. v. Country Villa Service Corp.* (C.D. Cal. 2015) 2015 WL 4163008, and *Matter of Shasta Linen Supply, Inc.* (June 22, 2016) Cal. Insurance Commissioner, No. AHB-WCA-14-31 (*Shasta Linen*).

29. The Wisconsin Office of Commissioner of Insurance ("WOCI") has also investigated SUNZ and its agreement with UWIC. WOCI's Report of the Examination of UWIC, as of December 31, 2018, released April 30, 2020, states as follows.

> The company will <u>issue</u> workers' compensation insurance policies in the [UWIC] name and will then <u>reinsure such policies</u> with [SIC] on a 100% uncapped quota share of the company's gross losses, allocated loss adjustment expense and unearned premium reserves associated with business written through the <u>fronting arrangement</u> (**Program Agreements**). The **Program Agreements** <u>include</u> this quota share reinsurance agreement, the *related Trust Agreement*, an *Underwriting Agency Agreement with Sunz Insurance Solutions*, LLC, *and a Third Party Claims Administration Agreement with Next Level Administrators*, LLC. Sunz Insurance Solutions, LLC, and Next Level Administrators **are affiliates of [SIC]**.
>
> [SIC] will reinsure on an indemnity basis a 100% quota share of the [UWIC] Gross Liabilities under the Program Policies. [UWIC] and [SIC] have entered into an Underwriting Agency Agreement with Sunz Insurance Solutions, LLC for the marketing and sale of the

Program Policies. [SIC] shall be responsible for the payment of amounts due Sunz Insurance Solutions, LLC for services rendered under the Underwriting Agency Agreement.

[UWIC] and [SIC] have entered into a Third Party Claims administration Agreement with Next Level Administrators, LLC to administer and pay claims under the Program Policies on behalf of the [UWIC]. *[SIC] shall be liable* for the payment of amounts due Next Level Administrators, LLC for services rendered and *for the funding of claims payments*.

30. Plaintiffs' scheme consists of a series of 3 inter-related and interdependent "Contracts" between the entities within the Integrated SUNZ Enterprise, as well as the non-affiliate "Issuing Insurer."

31. Contract 1: Program Policy;

32. Contract 2: Reinsurance Agreement;[1]

33. Contract 3: the ILS embedded in the Collateral Program Agreements entered into between SUNZ and the Policy Holder Insureds ("Retrocessionaires"), ultimately shifting all risk from the Policies to the Retrocessionaires, like the OSI Plaintiffs.

34. The ILS is a contract whereby OSI, for purposes of an investment return, would share in the underwriting results of the Program Policy issued, of which SIC, through the Reinsurance Agreements, had financial exposure on a number of Program Policies, including the one issued to OSI. The ILS offered absolutely no insurance coverage to OSI for workers' compensation insurance. There was no named insured, no coverage identified, no limit identified, and no

---

[1] "The Wisconsin compulsory and security surplus calculation requires insurers to add back premiums ceded to unauthorized reinsurers in calculating their required compulsory and security surplus. UWIC failed to add back premiums ceded to [SIC], an unauthorized reinsurer…" WOCI Report.

8
COMPLAINT

identifiable premium set forth. The ILS would not have satisfied OSI's obligation under California *Insurance Code* to maintain Workers' Compensation insurance.

35. The ILS is a security, an investment, otherwise identified as a derivative investment embedded within and directly related to an insurance arrangement. Pursuant to the NAIC Holding Company Act statutory provisions, the Sole Ultimate Controlling Person / Party of the ILS is Herrig and SUH.

36. The ILS placed the policyholder – i.e., OSI – who actually has an insurable interest, back in the chain of liability where a traditional reinsurer (like SIC) would otherwise absorb risk, thereby undermining the reason for purchasing insurance.

37. WOCI's Report of the Examination of UWIC continues:

> According to [state insurance law] (Unlawful Delegation): The board shall manage the business and affairs of the corporation and may not delegate its power or responsibility to do so except to the extent authorized by [state insurance law].
>
> A key responsibility delegated by the board to an officer of the [UWIC] is the authority to execute legally binding contracts on behalf of [UWIC]. It should be noted that contracts that are not signed by a signatory authorized by the board could potentially be challenged in court.
>
> The examination's review of the SUNZ Program Agreements revealed that UWIC is the only entity listed on the signature page of each agreement…
>
> It is recommended that [UWIC] take corrective action to ensure that the signatory for all contracts, including the SUNZ Program Agreements, be an officer or agent of the [UWIC], who has been authorized by the board to execute contracts on behalf of the company…

38. As noted above, OSI is a member of Cal-Sara. The interests the OSI seek to protect in having agreements entered into by unlicensed insurers declared null and void are germane to Cal-Sara's interests.

## THE ILLEGAL WORKERS' COMPENSATION INSURANCE PROGRAM AGREEMENTS

39. As a condition to issuance of the Program Policy, effective November 4, 2019, OSI entered into the Collateral Program Agreements with SUNZ.

40. Upon information and belief, the Program Agreement was not filed with the WCIRB or the California Department of Insurance.

41. By virtue of the ILS embedded in the Program Agreement, SUNZ has modified and entirely usurped the Program Policy.

42. SUH allowed and facilitated the undermining of the intended purchase of insurance provided within the legal terms and condition of the Program Policy by promoting SIS to illegally collect ILS charges under the Program Agreement, which is null and void as a matter of law. SUNZ promoted SIC and NLA to illegally retain at least 40% of the program charges as aggregate fees/profits while using additional elements of the program charges to directly pay claims in states that the unauthorized SIC had no license to do the business of insurance in, including California.

## CAUSES OF ACTION

### Count I

### Violation of California *Insurance Code* -Rates and Rebating

43. Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

44. The Program Agreement purports to charge rates to Plaintiffs in amounts in excess of the rates approved by the CDI.

45. Because the Program Agreement, including the ILS, purports to

1 deviate from the rates approved by CDI and transfer the risk of loss for injured worker claims back to Plaintiff, the Program ILS violates numerous Insurance Laws, is illegal, null, void, and unenforceable.

46. Plaintiffs seek a declaration that the Program Agreement, including the ILS, violates state Insurance Law, is illegal, against public policy and directing that SUNZ return all premiums paid by OSI, in an amount of no less than $1,681,129, together with a disgorgement of all profits and damages, together with punitive damages, in an amount to be determined by a jury.

## Count II

## Selling Reinsurance to Non-Insurance Company Retail Consumer

47. Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

48. Insurance companies may enter into reinsurance contracts with each other.

49. However, non-insurance companies or individual residents may not enter into reinsurance agreements.

50. The Program Agreement and ILS purport to describe a "reinsurance" agreement between OSI, non-insurers and an insurer.

51. Because reinsurance contracts between a non-insurance company such as OSI and an insurance company, such as SUNZ, are forbidden by state law, the Program Agreement and ILS are illegal, void, unenforceable, and against public policy. Plaintiff seeks a declaration that the Program Agreement, including the ILS, violate California *Insurance Code*, is illegal, against public policy, and directing that SUNZ return all premiums paid by OSI, in an amount of no less than $1,681,129, together with a disgorgement of all profits and damages, together with punitive damages, in an amount to be determined by a jury.

jng

## Count III

### Recission of Program Agreement/ILS

52. Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

53. SUNZ made knowing misrepresentations of fact concerning the alleged workers' compensation insurance it was providing to OSI and fraudulently induced OSI to enter into the relevant contracts. Specifically, the reinsurance was prohibited by law.

54. SUNZ made the foregoing misrepresentations with the intent to deceive, to defraud, and to profit from OSI. In short, SUNZ improperly transferred all risk back to OSI, thus failing to provide any consideration to OSI, defeating the entire purpose of the ILS.

55. To the extent declaratory, monetary and/or injunctive relief is not available, the Program Agreement, including the ILS, should be rescinded and SUNZ ordered to pay damages in an amount of no less than $1,681,129 and/or reform the Program Agreement to make it lawful, together with a disgorgement of all profits and damages in an amount, together with punitive damages, to be determined by a jury.

## Count IV

### Deceptive Trade Practices

56. Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

57. Deceptive acts or practices in the conduct of any business, trade, or commerce or the furnishing of any service is unlawful.

58. OSI is not a licensed reinsurance intermediaries.

59. Upon information and belief, SUNZ, is not a licensed reinsurer.

60. SUNZ engages in business, trade, commerce, and the furnishing of services in California.

61. SUNZ engages in such conduct even though it is, as explained above, not licensed to do so in certain cases and has failed, willfully, to comply with the California *Insurance Code*.

62. SUNZ made false and deceptive representations, including but not limited to the fact that it was providing legal workers' compensation to OSI. SUNZ never informed OSI that unauthorized producers were delivering insurance products to it in California.

63. As set forth above, the Program Agreement, including the ILS, is illegal and void, and SUNZ's related conduct in California is a violation of the California *Insurance Code*.

64. OSI reasonably relied on the false and misleading representations to their detriment.

65. Accordingly, OSI is entitled to damages in an amount of no less than $1,681,129, plus other potential statutory damages.

## Count V

## Common-Law Fraud

66. Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

67. Fraud is defined as "a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury."

68. The California *Insurance Code* requires reinsurance intermediaries to be licensed.

69. OSI is not a licensed reinsurance intermediary.

70. Upon information and belief, SUNZ is not a licensed reinsurer.

71. The ILS was presented by SUNZ as a "profit-sharing plan" and legitimate workers' compensation insurance product.

72. Based on the representations of SUNZ, OSI reasonably believed that it was purchasing workers' compensation insurance that would protect against losses yet permit for repayments if it experienced low claims.

73. A reading of the Program ILS, as explained more fully above, however, reveals that this "profit-sharing" scheme had no element of insurance, including impossible to understand terms as well as undisclosed or misrepresented factors and fees. Indeed, rather than receiving insurance as requested, OSI was actually reinsuring their own losses and were exposed to unlimited losses in a manner guaranteed to dramatically increase the cost of any claim.

74. Because the scheme contained no element of risk transfer to an insurer, the scheme was a fraud on OSI, who believed they had insurance.

75. Because SUNZ knew the scheme was a fraud, OSI is entitled to disgorgement of all premiums paid, together with prejudgment interest and punitive damages in an amount to be determined at trial but in no event less than $1,681,129, together with a disgorgement of all profits and damages in an amount, together with punitive damages, to be determined by a jury.

## Count VI

## Negligent Misrepresentation

76. Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

77. The elements for a negligent misrepresentation claim are (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the

plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

78. As set forth above, SUNZ requested a workers' compensation insurance policy based on its anticipated needs.

79. Plaintiffs sought, received and relied on SUNZ's advice in determining the correct insurance policy based on its payroll, its loss history, and the type of activities that it is engaged in.

80. Rather than selling an insurance product, SUNZ assured OSI that the purported "profit-sharing" scheme would fit.

81. Because the ILS effectively exposes OSI to unlimited risk from worker injuries and because SUNZ held itself out as having special expertise in recommending SIS products to Plaintiffs, SUNZ is liable to OSI for the full amount of premiums paid, together with disgorgement of any profits.
Based on the foregoing, Plaintiffs are entitled to a disgorgement of all premiums paid, together with prejudgment interest and punitive damages in an amount to be determined at trial.

82. Because of SUNZ's misrepresentations, Plaintiff is entitled to disgorgement of all premiums paid, together with prejudgment interest and punitive damages in an amount to be determined at trial but in no event less than $1,681,129, together with a disgorgement of all profits and damages in an amount, together with punitive damages, to be determined by a jury.

## Count VII

## Breach of Fiduciary Duty

83. Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

84. SUNZ advised OSI that by entrusting its workers' compensation planning to SIS, the ILS would reduce OSI's risk and administrative costs.

85. SUNZ represented that its products were appropriate for OSI.

86. SUNZ represented that its products were an "investment" that would result in "profit-sharing".

87. OSI entrusted SUNZ with its premiums under the circumstances giving rise to a confidential duty and a duty to speak with care.

88. SUNZ knew or should have known that its products passed the risk of catastrophic loss to OSI, and would likely result in OSI paying excessive premiums for workers' compensation insurance and, given the structure of the ILS, had little to no chance of returning any profit.

89. SUNZ knew or should have known that it would apply excessive fees, charges, and "reinsurance" fees to OSI's premiums, thus eliminating the possibility that OSI would receive any profits.

90. Based on the foregoing, OSI is entitled to a return of principal, together with interest and attorney's fees, together with a disgorgement of all profits and damages in an amount, together with punitive damages, to be determined by a jury.

### Count VIII
### Self-Dealing

91. Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

92. SUNZ advised OSI that monies paid to SUNZ would be placed into a "segregated premium trust account" and instead illegally commingled funds.

93. SUNZ advised that by entrusting its workers' compensation planning to SUNZ, it would reduce OSI's risk and administrative costs.

94. SUNZ represented that its products were appropriate for OSI.

95. SUNZ represented that its products were an "investment" that would result in "profit-sharing."

96. As described above, rather than work in good faith to generate profits that it would share with OSI, SUNZ engaged in a series of illegal and self-dealing transactions that enriched SUNZ at OSI's expense and were never disclosed to OSI.

97. Based on the foregoing, OSI is entitled to a return of principal, together with interest and attorney's fees, together with a disgorgement of all profits and damages in an amount, together with punitive damages, to be determined by a jury.

## Count IX

### Sherman/Clayton Act - Illegal Restraints of Trade

98. Plaintiff incorporates by this reference each and every allegation contained in paragraphs 1 through 42 of this Complaint as though fully set forth herein.

99. SUNZ has market power in the reinsurance market relevant to the allegations herein.

100. SUNZ engages in the practice of "bundling" investment products (insurance and reinsurance) as described above.

101. This "bundling" practice is illegal and constitutes "tying" under the antitrust laws.

102. Tying is the practice of selling one product or service as a mandatory addition to the purchase of a different product or service.

103. A tying sale makes the sale of one good (the tying good) to the de facto customer (or de jure customer) conditional on the purchase of a second distinctive good (the tied good).

104. The ILS is the "tied" product.

105. As set forth above, OSI was coerced into purchasing the non-insurance product – the ILS – as a condition of the SUNZ issuing a valid workers' compensation policy.

106. The ILS is a "debt instrument" not "insurance" because it does not contain a "stop-loss" component.

107. Based on the foregoing, OSI is entitled to a return of principal, together with interest and attorney's fees, together with a disgorgement of all profits and damages in an amount, together with punitive damages, to be determined by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1. For the Court to enter a declaratory judgment in accordance with Plaintiff's contention that: (i) the Collateral Program Agreements are void and unenforceable because they are collateral, or a side agreement, to the underlying workers' compensation insurance policy and which modify and/or alter the insured and insurers' rights and obligations under the insurance policy and were not first submitted to and approved by the Insurance Commissioner and WCRIB and were not attached to the policy; (ii) OSI is under no obligation to comply with the terms and requirements of the Collateral Program Agreements, and, (iii) Plaintiff owes nothing to SUNZ under the Collateral Program Agreements beyond its obligation to satisfy the $250,000 per accident deductible required under the deductible endorsements of the underlying policy.

2. For recovery of all costs and fees paid by OSI to SUNZ in excess of policy premiums and its deductible obligations under the insurance policy, including costs and fees paid to SUNZ under the Collateral Program Agreements for excess collateral required for the Loss Fund, cost containment services fees, and claimant investigative fees in the sum of $1,681,129;

3. For a trebling of damages and award of statutory attorney's fees;

3. For costs of suit; and,

4. For such other and further relief as the Court may deem proper.

Dated: January 12, 2021.

                                        NDH LLC

                                        /s/ Mohammed Wael Aly
                                        Attorney for Plaintiffs